UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

GFR, LTD.,

      Plaintiff,

v.

MARK FARNER,

      Defendant.

_____/

Case No. 1:18-cv-00238 (jlg)

Hon. Gordon J. Quist

| | |
|---|---|
| Douglas S. Bishop (P27616)<br>David A. Cvengros (P48504)<br>Bishop & Heintz, P.C.<br>Attorneys for Plaintiff<br>440 W. Front at Oak Street, P.O. Box 707<br>Traverse City, MI 49685-0707<br>(231) 946-4100 | Janet Ramsey (P63285)<br>Warner, Norcross & Judd, LLP<br>Attorneys for Defendant<br>111 Lyon, NW, Suite 900<br>Grand Rapids, MI 49503<br>(616) 752-2736<br><br>A. Eric Bjorgum (admission pending)<br>Karish & Bjorgum, P.C.<br>Attorneys for Defendant<br>119 E. Union Street, Suite B<br>Pasadena, CA 91103<br>(213) 785-8072 |

_____/

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION**

## **TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | INTRODUCTION ............................................................ | 6 |
| II. | STATEMENT OF FACTS...................................................... | 7 |
| A. | The Parties.... ........................................................... | 7 |
| B. | Defendants' Infringing Activities.............. ................................. | 9 |
| III. | ARGUMENT ............................................................... | 11 |
| A. | GFR has Met the Standards for a Preliminary Injunction ......................... | 11 |
| B. | GFR is Likely to Succeed on the Merits ............................................. | 11 |
| 1. | The Strength of the Marks Strongly Favors GFR................................... | 13 |
| 2. | Relatedness of Goods & Services Strongly Favors Plaintiff ...................... | 14 |
| 3. | Similarity of the Marks Strongly Favors GFR ..................................... | 14 |
| 4. | Evidence of Actual Confusion ...................................................... | 15 |
| 5. | Marketing Channels Used Strongly Favor Plaintiff ................................ | 16 |
| 6. | Relative Degree of Purchaser Care Favors GFR ................................... | 17 |
| 7. | Defendant's Intent in Selecting the Mark Favors Grand Funk .................. | 18 |
| 8. | Expansion of Product Lines Favors Plaintiff ....................................... | 19 |
| 9. | Summary of Factors ...................................................... | 19 |
| C. | Grand Funk will be Irreparably Harmed Without an Injunction .................. | 20 |
| D. | The Balance of Hardships Strongly Supports a Preliminary Injunction ........ | 21 |
| E. | Entry of a Preliminary Injunction Serves the Public Interest..................... | 22 |
| IV. | PLAINTIFF SHOULD NOT BE ORDERED TO POST A BOND ............... | 23 |
| V. | CONCLUSION .................................................................. | 24 |

## TABLE OF AUTHORITIES

**Cases**

*Abercrombie & Fitch v. Fashion Shops of Kentucky, Inc.,*
  363 F.Supp.2d 952, 959 (S.D. Ohio 2005) ............................................................12

*American Home Products Corp. v. Johnson Chemical Co., Inc.,*
  200 U.S.P.Q.2d 417 (2d Cir. 1978)..............................................................19, 22

*Audi AG v. D'Amoto*
  649 F.3d 534, 550 (6th Cir. 2006) ...........................................................11

*Beer Nuts, Inc. v. Clover Club Foods Co.,*
  805 F.2d 920, 231 U.S.P.Q. 913 (10th Cir. 1986) ..................................................18

*Big Boy Rests. v. Cadillac Coffee Co.,*
  238 F. Supp.2d 866, 871 (E.D. Mich. 2002)...........................................................15

*Bill Blass, Ltd. v. SAZ Corp.,*
  751 F.2d 152, 224 U.S.P.Q. 753 (3rd Cir. 1984) ....................................................23

*Bose Corp. v. QSC Audio Prods. Inc.,*
  293 F.3d 1367, 1371-76 (Fed. Cir. 2002) ............................................................13

*CLT Logistics v River West Brands,*
  777 F. Supp.2d 1052, 1073 (2011) ...................................................................20

*Daddy's Junky Music Stores,*
  109 F. 3d 275, 282 (6th Cir. 1997)...........................................................14, 16

*eBay, Inc. v. MercExchange,*
  547 U.S. 388, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006).............................................20

*Empire National Bank v. Empire of America,*
  559 F.Supp. 650, 657, 222 U.S.P.Q. 518 (W.D. Mich. 1983) .........................................19

*Express Mortgage Brokers Inc. v. Simpson Mortgage Inc.,*
  31 U.S.P.Q.2d 1371 (E.D. Mich. 1994)................................................................20

*Ferrari S.P.S. Esercizio Fabriche Automobili D. Corse v. Roberts,*
  944 F.2d 1235, 1243 (6th Cir. 1991). ...........................................................20

*Friendship Materials Inc. v Michigan Brick, Inc.*
  679 F. 2d. 100, 102 (6th Cir. 1982) ...........................................................11

*Frisch's Rest., Inc. v. Elby's Big Boy,*
  670 F.2d 642 (6th Cir.1992) .......................................................................12

*General Mills, Inc. v. Kellogg Co.,*
   824 F.2d 622, 625, 3 U.S.P.Q.2d 1442 (8th Cir. 1987) ....................................................21

*Giant Food, Inc. v. Nation's Foodservices, Inc.,*
   710 F.2d 1565, (Fed. Cir. 2004)...............................................................................13

*Gougeon Bros., Inc. v. Hendricks,*
   708 F.Supp. 811, 818, 8 U.S.P.Q.2d 1926 (E.D. Mich. 1988) ..................................23

*Hasbro, Inc. v. Lanard Toys, Ltd.,*
   858 F.2d 70, 73, 8 U.S.P.Q.2d 1345, 1347 (2d Cir. 1988) .......................................21

*Hill-Behan Lumber Company,*
   201 USPQ 246, 249-50 (TTAB 1978) .......................................................................15

*Homeowners Group, Inc., v. Home Marketing Specialists, Inc.,*
   931 F. 2d 1100, 1107 (6th Cir. 1991)..................................................................12, 17

*In re: DeLorean Motor Co.,*
   755 F. 2d. 1223 (6th Cir. 1985) .................................................................................11

*Little Caesar Enterprises, Inc. v. Pizza Caesar, Inc.,*
   834 F.2d 568, 572 (6th Cir. 1987) .............................................................................16

Meridian Transp. Resources, LLC v. Magic Carrier Resources LLC,
   518 F. Supp. 2d 1255, 1262 (D. Or. 2007) ..............................................................16

*Midwest Guaranty Bank v. Guaranty Bank,*
   270 F.Supp.2d 290, 924 (E.D. Mich. 2003)..............................................................22

*Ohio State University v. Thomas,*
   738 F. Sup. 2d 743, 750 (6th Cir. 2010)...............................................11, 14, 17, 19

*Opticians Association v. Independent Opticians,*
   920 F.2d 187 (3rd Cir. 1990) ....................................................................................22

*Palm Bay Imps., Inc. v. Veuve Clicquot Ponsardin Maison Fondee en
1772,* 396 F.3d 1369, 1374 (Fed. Cir. 2005) ...............................................................13

*Rodeo Collection, Ltd. v. West Seventh,*
   812 F.2d 1215, 1220, 2 U.S.P.Q.2d 1204 (9th Cir. 1987) .......................................21

*Roth v. Bank of the Commonwealth,*
   583 F.2d 527, 538-39 (6th Cir. 1978) .......................................................................23

*The Champions Golf Club, Inc. v. The Champions Golf Club, Inc.,*
78 F.3d 1111, 1121 (6th Cir. 1996)………………………………………………...12, 15

*UMG Recordings, Inc. v. Mattel, Inc.,*
100 USPQ2d 1868, 1883 (TTAB 2011........................................................................13

*Urbain v. Knapp Brothers Mfg. Co.,*
217 F.2d 810, 815-16 (6th Cir. 1954) .......................................................................23

*Vandag, Inc. v. A1 Bolser's Tire Stores, Inc.,*
750 F. 2d 903, 914 (Fed. Cir., 1984 ..........................................................................16

*Wynn Oil Co. v. American Way Serv. Corp.,*
943 F.2d 595, 600 (6th Cir. 1991)………………………………………………14,19, 20

## Other Authorities

3 *McCarthy on Trademarks*, §23.33[3][a]...............................................................18

3 *McCarthy, Trademarks and Unfair Competition* §30.21 (1996)...............................23

Federal Rule of Civil Procedure 65 .....................................................................7,23

Lanham Act, 15 U.S.C. §1114 and 1125(a) ........................................................7, 11, 19

# I. INTRODUCTION

Anyone who has listened to rock music at any time starting in 1973 has heard Grand Funk Railroad sing their song, "We're an American Band." In fact, the song became so famous that Grand Funk Railroad became known worldwide and throughout the United States as "The American Band."

Plaintiff, GFR, Ltd. ("GFR" or "Grand Funk Railroad") is Grand Funk Railroad. In recognition of its trademark rights, GFR owns U.S. Trademark Registration No. 2,820,656 for THE AMERICAN BAND, U.S. Trademark Registration No. 2,791,528 for GRAND FUNK RAILROAD THE AMERICAN BAND & DESIGN (the "AMERICAN BAND Marks") and U.S. Trademark Registration No. 1,936,824 for GRAND FUNK RAILROAD. Each of these registrations is active and incontestable. (See **Exhibit A**)

Defendant Mark Farner is an ex- GFR band member and Just Having Fun Productions is his management company. Because of his repeated failures to respect the intellectual property rights of Grand Funk Railroad, Mr. Farner is now under an Order of Permanent Injunction, issued by this Court on January 21, 2004, restricting his use of the terms GRAND FUNK RAILROAD and GRAND FUNK in connection with his performances. [1]

GFR and Mr. Farmer are now back before this Court. This time, however, not only is Mr. Farner *continuing* to unlawfully infringe the GRAND FUNK and GRAND FUNK RAILROAD trademarks in violation of the Order of Permanent Injunction, he is also infringing GFR's AMERICAN BAND Marks.

---

[1] *See* **Exhibit B**, Permanent Injunction and Stipulation of Dismissal.

Accordingly, Plaintiff filed the instant motion pursuant to Federal Rule of Civil Procedure 65 and the Lanham Act, 15 U.S.C. §1114 and 1125(a), seeking a preliminary injunction against both Defendants, preventing them from (1) unlawfully trading on Plaintiff's famous AMERICAN BAND Marks and (2) continuing to violate the Order of Permanent Injunction[2].    This motion is supported by the Affidavits of Donald Brewer (see **Exhibit C** - **Brewer Affidavit**) and Stan Pace (see **Exhibit D** - Pace Affidavit), respectively.

## II. STATEMENT OF FACTS

### A.    The Parties

Grand Funk Railroad is a well-known musical phenomenon with a carefully cultivated reputation created over decades of work (See Brewer Affidavit, ¶6,7,14).    The band has had numerous "number one" hits, including "We're An American Band," as well as a significant fan following due to its nearly continuous touring for the last 45+ years (*Id*, ¶14).    GRAND FUNK owns a number of famous marks, including, without limitation: "GRAND FUNK RAILROAD," "GRAND FUNK," and the AMERICAN BAND Marks.  (*Id,* ¶ 4).

By virtue of its many decades of popularity, sales of concert tickets, records, songs and related goods and services, as well as nearly continuous touring, the following GFR marks, "THE AMERICAN BAND," "GRAND FUNK," and "GRAND FUNK RAILROAD," among others, have become famous and strongly associated with Plaintiff.    Below is a chart of GRAND FUNK's incontestable federal registrations, to which it has the exclusive rights[3]:

---

[2] Plaintiff's request for entry of a preliminary injunction is based upon Counts 1 (Infringement Under 15 U.S.C. §1114(1)) and II (Infringement Under 15 U.S.C. §1125(a) of the Complaint.    The court need not address the remaining claims for purposes of this Motion.  *See Lonestar Steakhouse and Saloon, Inc.* v. *Elfa V.A., Inc.*, 43 F. 3d 922, 930 n.10 (4th Cir. 1995).

[3] *See* Affidavit of Donald Brewer.

| Mark | Reg. No. | Services |
|---|---|---|
| THE AMERICAN BAND | 2,820,656 | Entertainment services in the form of live performances by a vocal and instrumental group, in International Class 41. |
| GRAND FUNK RAILROAD | 1,936,824 | Pre-recorded compact discs, cassette tapes and videotapes featuring musical performances, in International Class 9. |
| GRAND FUNK | 2,359,806 | Pre-recorded compact discs, audio cassette tapes and videotapes featuring musical performances, in International Class 9. |
| GRAND FUNK | 1,409,871 | Entertainment services in the form of performances by a vocal and instrumental group, in International Class 41. |



|  | 2,791,528 | Entertainment services in the form of performances by a vocal and instrumental group, in International Class 41. |

Grand Funk continues to tour with two of its original three founding members, Don Brewer and Mel Schacher (*Id*,¶ 7, 8 & 9).  Defendant Farner, one of the original members of Grand Funk Railroad, left the band in 1983 to pursue a solo career (*Id*,¶ 8) and continues to tour as a solo artist.  Although he rejoined the band in the mid-90's, Mr. Farner permanently left the group in 1998 (*Id*, ¶ 9).  Just Having Fun Productions is Farner's booking agent, contracting with third parties for Farner's concert dates as a solo artist.

**B.    Defendants' Infringing Activities**

In 2004, GRAND FUNK brought an action against Farner and his then agent, Paradise Artists, for infringement of the marks "GRAND FUNK RAILROAD" and "GRAND FUNK" (hereinafter referred to as the "Original Lawsuit").  The Original Lawsuit resulted in an Order of Permanent Injunction, which is attached hereto as Exhibit 2.

Such Injunction notwithstanding, Farner has again undertaken a concert tour series promoting himself using, without GFR's permission, GFR's marks, "GRAND FUNK RAILROAD" and "THE AMERICAN BAND."  Defendants' uses of such marks not only violate the Permanent Injunction, they violate GFR's exclusive trademark rights in those marks and registrations.  Documentation of the infringing activities is contained in the accompanying Affidavit of Stanley Pace (**Exhibit D**).

On February 19, 2018 and February 21, 2018, GFR sent cease and desist letters (see **Exhibit E**), demanding that they immediately comply with the terms of the Permanent Injunction and terminate their unauthorized uses of Plaintiff's trademarks.  Defendants, however, responded by refusing to recognize Plaintiff's incontestable Trademark (See **Exhibit F**), leaving Plaintiff Grand Funk Railroad no choice but to bring this action.

Yet, even after being served with the complaint, Defendants continued their policy of conflating their use of the term, AMERICAN BAND, with Plaintiff's use in such a fashion as to intentionally create a false impression that Mr. Farmer is the true owner of the Grand Funk brand.  In his affidavit at ¶ 8, Mr. Pace has documented examples of Defendants' deliberate attempts to confuse the public.    Below is one example of such an attempt; Grand Funk Railroad's logo, side by side with Defendants' logo:

 

Both logos feature: (1) the dominant term AMERICAN BAND in white lettering on the bottom of the mark; (2) the name of the performer in curved letters on the top of the mark; and (3) in the middle of the mark, a shadowed human hand with a pointed index finger, superimposed on (4) a riff on the American flag's stars and stripes.   That Defendants' logo was directly derived from Plaintiff's logo cannot be denied.   That Defendants' logo was designed to create the false impression among the fan base and others that the origin and quality of Defendants' music is to be viewed as sponsored, approved by, managed and/or associated with Plaintiff, also cannot be denied.

In short, Plaintiff's remedy at law is inadequate to compensate Plaintiff fully for its injuries when Defendants continue to engage in their infringing activities, despite the issuance of a permanent injunction and the cease and desist letters.   Waiting until the case concludes for a final and permanent injunction is too long to wait.   When all is said and done, it would be extremely difficult or impossible to estimate the amount of compensation that would afford Plaintiff complete monetary relief.

## III. ARGUMENT

**A .**    **GFR has Met the Standards for a Preliminary Injunction.**

This Court has wide discretion in deciding motions for preliminary injunctions. *Friendship Materials, Inc.* v. *Michigan Brick, Inc.*, 679 F. 2d 100, 102 (6th Cir. 1982). Under Sixth Circuit law, it must consider four factors: (1) whether the Movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable harm if an injunction is denied; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest favors granting relief. *See Audi AG v. D'Amato,* 649 F.3d. 534, 550 (6th Cir. 2006). While the Sixth Circuit has cautioned that these are "factors to be balanced, not prerequisites to be met," all four factors support granting a preliminary injunction in this case. *In re DeLorean Motor Co.,* 755 F.2d 1223 (6th Cir. 1985).

**B.**    **GFR is Likely to Succeed on the Merits.**

The complaint in this case seeks relief on three separate counts: (i) infringement of Plaintiff's federally registered trademark under Section 1114 of the Lanham Act; (ii) unfair competition and infringement of Plaintiff's rights under Section 1125(a) of the Lanham Act; and (iii) violation of the Michigan common law of unfair competition.

A claim for trademark infringement under 15 U.S.C. § 1114 requires proof of: (1) ownership of a valid, protectable trademark; (2) use of the mark in commerce by defendant without consent; and (3) a likelihood of consumer confusion. *Ohio State Univ. v. Thomas,* 738 F. Supp.2d 743, 749 (S.D. Ohio 2010). The same standard applies to claims for unfair

11

competition under 15 U.S.C. §1125. *Id.* (citing *Frisch's Rest., Inc. v. Elby's Big Boy,* 670 F.2d 642 (6th Cir.1992)).

There can be no dispute that GFR owns valid, protectable trademarks. There can also be no dispute that Defendant has used and is using the GRAND FUNK Marks and AMERICAN BAND Marks or confusingly similar variations thereof in commerce without consent. Therefore, the analysis devolves to whether there is a likelihood of confusion.

Likelihood of confusion is the touchstone of a claim for trademark infringement under the Lanham Act. *See The Champions Golf Club, Inc. v. The Champions Golf Club, Inc.,* 78 F.3d 1111, 1121 (6th Cir. 1996). The existence of a likelihood of confusion, in turn, is determined by an evaluation of the following factors: (1) the strength of plaintiff's mark; (2) the relatedness of the goods or services involved; (3) the similarity of the marks; (4) evidence of actual confusion; (5) overlapping marketing channels; (6) likely degree of consumer care; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion. *See Frisch's Rest., Inc.,* 670 F.2d at 648.

The foregoing factors "imply no mathematical precision and a plaintiff need not show that all, or even most, of the factors listed are present in any particular case to be successful." *Abercrombie & Fitch v. Fashion Shops of Kentucky, Inc.,* 363 F.Supp.2d 952, 959 (S.D. Ohio 2005) (internal quotations omitted). The "ultimate question [is] whether relevant consumers are likely to believe that the products or services offered by the parties are affiliated in some way." *The Champions Golf Club, Inc.,* 73 F.3d at 1116 (citing *Homeowners Group, Inc. v. Home Mktg. Specialists, Inc.,* 931 F.2d 1100, 1107 (6th Cir. 1991)).

### 1.     The Strength of the Marks Strongly Favors GFR

The first factor in a likelihood of confusion analysis is a determination of the strength of Plaintiff's mark.  Plaintiff's GRAND FUNK and AMERICAN BAND Marks are famous, therefore, they may be considered strong for purposes of a likelihood of confusion analysis.

Famous marks are afforded a broad scope of legal protection because they are more likely to be remembered and associated in the public mind than a weaker mark.  *Palm Bay Imps., Inc. v. Veuve Clicquot Ponsardin Maison Fondee en 1772*, 396 F.3d 1369, 1374 (Fed. Cir. 2005); *Bose Corp. v. QSC Audio Prods. Inc.*, 293 F.3d 1367, 1371-76 (Fed. Cir. 2002) (finding opposer's marks, ACOUSTIC WAVE and WAVE, to be famous and thus entitled to broad protection);  *UMG Recordings, Inc. v. Mattel, Inc.*, 100 USPQ2d 1868, 1883 (TTAB 2011) (finding MOTOWN very famous in connection with musical recordings and musical entertainment, and noting that "a famous mark such as Motown can be expected to cast a long shadow and to be used in connection with numerous collateral goods").

Here, there can be no question that the AMERICAN BAND mark is famous – it is known by virtually everyone, whether a fan or not.  It has been in use for over *45 years*, has enjoyed extensive media exposure, and the song and album has been played and heard in many venues around the world and been played and heard on many radio stations, stereos and other sound systems.  See *Giant Food, Inc. v. Nation's Foodservices, Inc.,* 710 F.2d 1565, (Fed. Cir. 2004), where the court held that the mark GIANT FOOD was famous based on *45 years* of use, extensive media exposure, sales in excess of $1 billion per year, and prominent display on the facade of supermarkets.

Further, as detailed in the Affidavit of Don Brewer and confirmed by the Wikipedia site relating to the Grand Funk's American Band album, it is a certified "gold album" and is one of the top 200 albums *of all time*.   https://en.wikipedia.org/wiki/We%27re_an_American_Band.

Finally, because the AMERICAN BAND Marks registered in 2003 and 2004, the USPTO deems them incontestable.  As the Sixth Circuit has held, "once a mark has been registered for five years, the mark must be considered strong and worthy of protection."   *Wynn Oil Co. v. American Way Serv. Corp.,* 943 F.2d 595, 600 (6th Cir. 1991).   Further, Plaintiff owns all exclusive rights to the mark; the song, "We're An American Band" from which the mark is derived, was not originally written or even sung by Defendant Farner (See Brewer Affidavit, ¶ 14).

## 2.  Relatedness of  Goods & Services Strongly Favors Plaintiff

"If the parties compete directly by offering their goods or services, confusion is likely if the marks are sufficiently similar…".   *See Ohio State University* v. *Thomas*, 738 F. Sup. 2d 743, 750 (6th Cir. 2010).

Here, Plaintiff and Defendant compete directly.  They provide identical goods/services: they are performers and promoters of live music.  Thus, the facts here fit into the category of "competing directly" by offering the exact same goods or services – that being music either recorded or performed.  Therefore, "confusion is likely if the marks are sufficiently similar." *Daddy's Junky Music Stores,* 109 F. 3d 275, 282 (6th Cir. 1997).

## 3.  Similarity of the Marks Strongly Favors GFR

The similarity of the two trademarks is a "factor entitled to considerable weight" in determining the likelihood of confusion. *The Champions Golf Club, Inc. v. The Champions Golf Club, Inc.,* 78 F.3d 1111, 1118-19 (6th Cir. 1996).   Here, Defendant has incorporated the

identical AMERICAN BAND Mark, which is exclusively Plaintiff's, to market the same musical performance services. *Big Boy Rests. v. Cadillac Coffee Co.,* 238 F. Supp.2d 866, 871 (E.D. Mich. 2002) (finding likelihood of confusion where defendant used identical marks to sell identical goods).

Plaintiff's mark is THE AMERICAN BAND. Defendant has misappropriated that mark by replacing the "THE" with his personal name, to arrive at MARK FARNER'S AMERICAN BAND. Without some significant further research and independent investigation to clarify that MARK FARNER is no longer associated with either "THE AMERICAN BAND" or GRAND FUNK RAILROAD, there is a strong likelihood the two marks will lead to confusion.

"It is a general rule that the addition of extra matter such as a house mark or trade name, [or here, a personal name] to one of two otherwise confusingly similar marks will not serve to avoid a likelihood of confusion between them." Indeed, "*....The addition may actually exacerbate the likelihood of confusion...) See, In re Hill-Behan Lumber Company*, 201 USPQ 246, 249-50 (TTAB 1978), among many others.

The doctrine applies directly, even more powerfully here, where Plaintiff's appropriated mark, AMERICAN BAND, is famous. Defendant's addition of his name to the mark – especially when his name, and his website refer to Plaintiff and Plaintiff's marks, does *not avoid confusion – it exacerbates the confusion.* This factor weighs heavily in favor of the likelihood of confusion.

### 4.  Evidence of Actual Confusion

The cases are clear that evidence of actual confusion is difficult to obtain, particularly at the early stages of infringement, and thus the failure to prove instances of actual confusion is not dispositive. *The Champions Golf Club, Inc.*, 78 F.3d 1119. "Due to the difficulty of securing

evidence of actual confusion, a lack of such evidence is rarely significant, and the factor of actual confusion 'is weighted heavily only when there is evidence of past confusion or, perhaps, when the particular circumstances indicate such evidence should have been available.'" See *Vandag, Inc.* v. *A1 Bolser's Tire Stores, Inc.,* 750 F. 2d 903, 914 (Fed. Cir., 1984).

Here, Plaintiff's ability to secure the evidence of actual confusion is limited only by the early stage of this proceeding.   The strength of the *likelihood of confusion* portends ample evidence of actual confusion – which will undoubtedly become part of the record.   This factor, while not establishing a likelihood of confusion, clearly does apply in the negative to the analysis.   See *Little Caesar Enterprises, Inc.* v. *Pizza Caesar, Inc.*, 834 F. 2d 568, 572 (6th Cir. 1987) ("Less weight given when 'there has been no real opportunity for actual confusion.'")

### 5.   Marketing Channels Used Strongly Favor Plaintiff

The fifth factor in the trademark infringement and unfair competition analysis requires a court to consider the similarities or differences between the predominant customers of the parties' respective goods or services. *Daddy's Junky Music Stores*, 109 F. 3d 285.   Plaintiff and Defendant not only provide identical services, *they formerly provided them together.* And they continue to attract the identical market: their former fans looking to find current performances and/or licensed merchandise.   The identity of marketing channels weighs strongly in favor of finding a likelihood of confusion exists.

Further, both parties rely on their respective websites, as well as on Facebook[®] and YouTube[®] as marketing vehicles, for both themselves and tickets to their performances.   *See* Affidavit of Stanley Pace;   *See also, Meridian Transp. Resources, LLC v. Magic Carrier Resources LLC,* 518 F. Supp. 2d 1255, 1262 (D. Or. 2007) (granting permanent injunction after

finding, among other things, that both parties "advertise their services on an internet website" and thus "offer their services in the same marketing channels").

Accordingly, the similarities between the predominant customers of the parties' respective services and the similar marketing approaches (internet) employed by them are likely to lead consumers to believe that Defendant Farner and Plaintiff GFR, Ltd. "are affiliated in some way." *Homeowners Group, Inc.*, v. *Home Marketing Specialists, Inc.*, 931 F. 2d 1100, 1107 (6th Cir. 1991).

### 6.   Relative Degree of Purchaser Care Favors GTR

In light of Mr. Farner's extensive references to the GRAND FUNK and AMERICAN BAND Marks throughout his materials, there is no way, without extensive independent investigation, to discern the underlying fact that Farner is no longer playing with the Grand Funk Railroad band.  No amount of sophistication would avoid such confusion here.

Indeed, even (or, perhaps, especially) persons familiar with the history of Grand Funk Railroad are likely to mistakenly perceive a current relationship between Grand Funk Railroad and Mr. Farner, especially given the overlapping uses of "AMERICAN BAND."  Accordingly, this element weighs strongly in favor of finding a likelihood of confusion exists.

In *Ohio State University* v. *Thomas*, 738 F. Supp. 2d 743 (S.D. Ohio 2010), the court addressed whether Defendant's website infringed Plaintiff's OHIO STATE name and trademarks.  The court noted that "Defendant's website and publications are free.  The commercial benefit realized by Defendants is in the advertising revenue obtained via the mass circulation of the allegedly infringing publications and the consumer visits to the allegedly infringing website." *Id.* at 753.  The court concluded that the consumers would not exercise a high degree of care when viewing Defendant's products and that internet consumers are

especially unlikely to make significant efforts or to take care in ascertaining the true source of the material they view, particularly when both the domain name and the website itself display Ohio State's name and trademarks associated with Ohio State athletics." *Id.* at 753-754.

In this case, this Court has already entered a Permanent Injunction restricting Defendant Farner's use of Plaintiff's trademarks.  Despite that, Mr. Farner and his agent are still out there, attempting to draw false connections between the parties and improperly trade upon the trademarks associated with Grand Funk.  Purchasers are not likely to take the time necessary to determine that, in fact, Mr. Farner is no longer playing with the band and is not the actual band.

### 7.   Defendant's Intent in Selecting the Mark Favors Grand Funk

Clearly Mr. Farner intentionally selected his marks—the prior episode of unlawful use of GRAND FUNK, which led to a Permanent Injunction, and his new scheme, to move forward using Plaintiff's AMERICAN BAND mark without authorization, shows his full, if ill-advised, intent. Further, there is abundant evidence that, once Defendants' attention was called to Plaintiff's incontestable trademark rights through cease and desist letters, they were non-responsive and continued to infringe.

Trademark law is well established in imposing on a junior user the obligation to avoid using a mark that is likely to lead to confusion.  3 *McCarthy on Trademarks*, §23.33[3][a].  The courts routinely stress the "infinity" of other choices the junior user has at its disposal; if it selects one which is likely to lead to confusion, it is *inferred* that the junior user harbors an intent to create the likely confusion.  As the Tenth Circuit held in *Beer Nuts, Inc. v. Clover Club Foods Co.*, 805 F.2d 920, 231 U.S.P.Q. 913 (10th Cir. 1986):

> The "deliberate adoption of a similar mark may lead to an inference of intent to pass off goods as those of another which in turn supports a finding of likelihood of confusion.

The Sixth Circuit ruled similarly in *Wynn Oil Co., supra,* stating "Understandably, courts have held that use of a mark with knowledge of another's prior use of the mark supports an inference of intentional infringement."  19 U.S.P.Q.2d at 1822, citing *Empire National Bank v. Empire of America,* 559 F.Supp.650, 657, 222 U.S.P.Q. 518 (W.D. Mich. 1983).  As the Second Circuit held in *American Home Products Corp. v. Johnson Chemical Co., Inc.,* 589 F.3d. 103, 200 U.S.P.Q. 417 (2d Cir. 1978), "one who adopts the mark of another acts at his own peril..."

The adoption and use of Plaintiff's AMERICAN BAND was done with full intent to capitalize on Plaintiff's goodwill.  If an inference is to be drawn from Defendant's conduct, it is that Defendant is engaged in bad faith, and is attempting to wrongfully benefit from Plaintiff's valuable investment.  Clearly, this element weighs in favor of finding a likelihood of confusion.

## 8.   Expansion of Product Lines Favors Plaintiff

Given the existing identity of both parties' marks, there is no need to consider possible expansion.  This element clearly weighs in Plaintiff's favor.  "[A]s with the seventh factor, an affirmative finding will provide a strong indication that the parties' simultaneous use of the marks is likely to lead to confusion, while a negative finding is not a strong indication to the contrary."  See *Ohio State University* v. *Thomas, supra,* at 755 citing *Champions Golf,* 78 F. 3d at 1122.

## 9.   Summary of Factors

As the above discussion clearly indicates, Plaintiff has made a strong showing that it will likely succeed on the merits of its claims under both Section 1114 and Section 1125(a) of the Lanham Act, [as well as the common law claim of unfair competition in Michigan], having shown that Defendant's use of the mark AMERICAN BAND is creating, and is likely to

continue to create, confusion in the marketplace as to the source of the services offered under the that mark.

What's more, Defendant has been put on notice of and is fully aware that its usurpation of Plaintiff's mark is without Plaintiff's consent. The Sixth Circuit has held that the use of a contested mark with knowledge of the protected mark at issue supports a finding of intentional copying, which creates a presumption of likelihood of confusion. *Ferrari S.P.S. Eserexizio Fabriche Automobili D. Corse v. Roberts,* 944 F.2d 1235, 1243 (6th Cir. 1991).

The remaining factors to be considered in addressing a preliminary injunction motion are addressed below.

## C.  Grand Funk will be Irreparably Harmed Without an Injunction

There is some controversy as to whether the presumption of irreparable harm in trademark cases survived *eBay, Inc.* v. *MercExchange*, 547 U.S. 388, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006). There, the Supreme Court held that irreparable harm does not necessarily follow from a finding of patent infringement. The Sixth Circuit, however, has yet to address whether eBay applies to injunctions in trademark cases. *CLT Logistics v. River West Brands*, 777 F Supp.2d 1052, 1073 (2011). In any event, Mr. Farner's overt attempt to trade on Plaintiff's AMERICAN BAND Marks, in conjunction with his repeated violations of the Permanent Injunction, render the presumption issue moot.

In a trademark infringement case, a "finding of irreparable injury ordinarily follows when a likelihood of confusion or possible risk to reputation appears .... the irreparable injury flows both from the potential difficulty of proof of plaintiff's damages, and also from the impairment of intangible values...."*Wynn Oil v. American Way Service Corp.* 943 F.2d 595, 608 (6th Cir. 1991). This was similarly the holding of Judge Gadola in Michigan's Eastern District in *Express Mortgage Brokers Inc. v. Simpson Mortgage Inc.*, 31 U.S.P.Q.2d 1371 (E.D. Mich. 1994), in which the court stated: "In an action for a preliminary injunction in a trademark infringement action, a

20

showing of likelihood of confusion establishes a plaintiff's irreparable injury." Judge Gadola relied on several authorities, including *Hasbro, Inc. v. Lanard Toys, Ltd.*, 858 F.2d 70, 73, 8 U.S.P.Q.2d 1345, 1347 (2d Cir. 1988) ("In a Lanham Act case a showing of likelihood of confusion establishes both a likelihood of success on the merits and irreparable harm") and *General Mills, Inc. v. Kellogg Co.,* 824 F.2d 622, 625, 3 U.S.P.Q.2d 1442 (8th Cir. 1987) ("Since a trademark represents intangible assets such as reputation and goodwill, a showing of irreparable injury can be satisfied if it appears that [plaintiff] can demonstrate a likelihood of consumer confusion."). See also, *Rodeo Collection, Ltd. v. West Seventh*, 812 F.2d 1215, 1220, 2 U.S.P.Q.2d 1204 (9th Cir. 1987) ("Once the plaintiff in an infringement action has established a likelihood of confusion, it is ordinarily presumed that the plaintiff will suffer irreparable harm if injunctive relief does not issue.").

The strong showing of likelihood of confusion in the present case, based upon the Defendant's appropriation of Plaintiff's mark in its entirety, use of the mark in directly competitive websites, with the clear intent to appropriate Plaintiff's website traffic for itself, is unquestionably sufficient evidence to establish likelihood of confusion and, therefore irreparable injury to Plaintiff should an injunction not issue.

## D.  The Balance of Hardships Strongly Supports a Preliminary Injunction.

In balancing the respective hardships, the Court should consider the potential ongoing harm to Plaintiff if the infringement continues versus the potential loss to Defendant if it is enjoined from continuing to use the confusingly similar mark.

As between the two parties, Plaintiff, GFR, Ltd. (Grand Funk Railroad) the genuine, famous AMERICAN BAND, stands to experience substantial hardship from Defendant's brazen appropriation and infringement of its marks pending the litigation of this case. This damage

results not only from the lost/diverted sales, potential bad reviews, negative publicity and disappointment that may result from the potentially bad quality of Defendant's performances, both on stage and off, but results significantly from the fact of Plaintiff's impaired ability to exclusively control the manner and extent of use of its AMERICAN BAND Marks.

Plaintiff understands that the injunction will impact Defendants, which will need to modify their future advertising, website and social media accounts to delete all references to AMERICAN BAND.

In any event, Plaintiff respectfully suggests that any harm that arises from preliminary relief is self-inflicted.  It was *Defendant's* decision to ignore Plaintiff's [two] demand letters that resulted in this proceeding.  As the District Court noted in *Midwest Guaranty Bank v. Guaranty Bank,* 270 F.Supp.2d 290, 924 (E.D. Mich. 2003) (in granting a preliminary injunction), a defendant cannot place itself in harm's way and then later claim that an injunction should not issue because of the costs that it must incur in order to remedy its own misconduct).  Further, any prejudice to Defendant for its unlawful conduct is not a harm but a benefit to the interests of the law.

Moreover, the established rule of *American Home Products, supra,* 589, F.3d 103, 200 U.S.P.Q. 417, is applicable here:  "One who adopts the mark of another acts at his own peril..." Added to this is the harm to the public, who, without the protection sought herein, will continue to be irreparably harmed.  In keeping with the original intent of trademark laws as consumer protection statutes, these consumers deserve the protection against ongoing confusion.

### E. Entry of a Preliminary Injunction Serves the Public Interest

In Lanham Act cases, the "public interest" is most often a synonym for the right of the public not to be deceived or confused.  *Opticians Association v. Independent Opticians,* 920 F.2d

187 (3rd Cir. 1990).  See also, *Bill Blass, Ltd. v. SAZ Corp.*, 751 F.2d 152 (3rd Cir. 1984).  Thus, "once likelihood of confusion is shown, it follows that the public interest is damaged if such confusion continues." 3 *McCarthy, Trademarks and Unfair Competition* §30.21 (1996).

As stated by the court in *Gougeon Bros., Inc. v. Hendricks*, 708 F.Supp. 811, 818, (E.D. Mich. 1988), "trademark infringement, by its very nature, adversely affects the public interest in the 'free flow' of truthful commercial information."   Defendant's wrongful use of Plaintiff's mark as well as repeated violations of the Court's Permanent Injunction intentionally deceives the public and trades on Plaintiff's well-earned reputation.

For these reasons, the public interest element – to protect against ongoing confusion – is satisfied.

## IV.  PLAINTIFF SHOULD NOT BE ORDERED TO POST A BOND

While Rule 65 generally requires a party that has been granted injunctive relief to post a bond as surety for any damages that the enjoined party may sustain should the Court ultimately decide that injunctive relief should not have been issued, the Sixth Circuit has held that the necessity of a bond is committed to the sound discretion of the District Court.  *See, e.g., Roth v. Bank of the Commonwealth,* 583 F.2d 527, 538-39 (6th Cir. 1978); *Urbain v. Knapp Brothers Mfg. Co.,* 217 F.2d 810, 815-16 (6th Cir. 1954).   This discretion includes the authority to determine that injunctive relief may issue without any bond.  *Urbain,* at 815-16.  Here, because Mr. Farnum is certainly entitled to continue to use his own name in all advertising and promotional materials, and, because, his decision to couple his name with the reference to AMERICAN BAND occurred in commerce less than a year ago, the preliminary injunction is unlikely to cause either Defendant to incur any financial harm.

## V.    CONCLUSION

A preliminary injunction to prevent Defendant from continuing to use AMERICAN

BAND in its advertising and on its websites, social media, tickets, etc., is necessary to protect

against ongoing confusion until this case can be finally adjudicated. Such relief is respectfully

requested.


                                                    BISHOP & HEINTZ, P.C.


DATED:  July ____, 2018              By:    _____
                                                    Douglas S. Bishop (P27616)
                                                    David A. Cvengros (P48504)
                                                    Attorneys for Plaintiff
                                                    440 West Front at Oak Street
                                                    P.O. Box 707
                                                    Traverse City, MI 49685-0707
                                                    (231) 946-4100


LMS\DAVE\GFR\7.3.18 - Memo in Support of Plaintiff's Motion for Pre Injunction.docx